THE UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF ILLINOIS

CHICAGO DIVISION

| | |
|---|---|
| HERMAN BARNES ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> OFFICE OF THE CHIEF JUDGE OF THE ) <br> CIRCUIT COURT OF COOK COUNTY ) <br> ILLINOIS ) <br> ) <br> ) <br> Defendant. ) | Case No. 1:18-cv-02699 <br><br> **Plaintiff Demands Trial By Jury** |

### PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES

Plaintiff HERMAN BARNES (hereinafter "BARNES" or "HERMAN"), through his undersigned counsel, seeks redress against Defendant OFFICE OF THE CHIEF JUDGE OF THE CIRCUIT COURT OF COOK COUNTY. (hereinafter "CJCCCC") and states as follow:

1. Plaintiff BARNES brings this action for violation of Title VII of the Civil Rights Act of 1964. Plaintiff seeks declaratory, compensatory, and equitable relief.

2. This Court has subject matter jurisdiction over Plaintiff's ADA and retaliation claims pursuant to 28 U.S.C. § 1331.

1

3. This Court has supplemental jurisdiction over Plaintiff 's common law claims pursuant to 28 U.S.C. § 1367.

4. Venue in this court is proper for purposes of Plaintiff's Title VII claim pursuant to 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events giving rise to this claim occurred in this judicial district.

5. Plaintiff is a citizen of the United States who resides in this judicial district.

6. Plaintiff was hired as a Custodian/Laborer with Defendant on or about December 7, 2009.

7. Defendant CJCCCC is a government entity operating under the laws of the State of Illinois. At all relevant times, Defendant has been continuously engaged in detaining criminal defendants and other individuals in the state of Illinois.

## Administrative Proceedings

8. On May 19, 2015, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging discrimination based upon his disability and a retaliation..

9. Plaintiff's EEOC Charge was filed more than sixty (60) days prior to bring this claim. (Attached as Exhibit "A")

10. On or about January 19, 2018 Plaintiff received a notice of right to

sue from the EEOC on his charge. (Attached as Exhibit "B")

11. Plaintiff's discrimination claim is timely filed within 90 days of the receipt of the notice of "right to sue".

## Factual Allegations Common to All Counts

12. On or about June 2011, Barnes became ill with a respiratory infection after using a floor stripping product at the Cook County Temporary Juvenile Detention Center. ("CCJTDC")

13. The respiratory infection was caused by the chemical contained in the floor stripping product. On belief the chemical is known as Rybar.

14. As a result of becoming ill, Plaintiff missed work and advised Defendant that he had become sick after inhaling the chemical from the floor stripper.

15. Plaintiff placed his employer on notice that if he was exposed to the chemical within the floor stripper that he would become ill again.

16. Plaintiff used this stripping product containing Rybar at times during his employment with Defendant.

17. After using this floor stripping product, Plaintiff was required to provide a release to return to work from his physician.

18. Once the release to return to work was provided by the physician to

Defendant, a request for a respirator was made when Plaintiff used this floor stripping product.

19. In essence, Plaintiff placed the Defendant on notice that if he were to use the floor stripping product that he would require an accommodation and that he would need a respirator.

20. This accommodation was approved by the Deputy Transitional Administrator, Brenda Welch.

21. From approximately 2011 to 2012, additional floor stripping Equipment (stripper) was purchased by the CCJTDC or Defendant that did not contain a chemical agent that made Plaintiff sick and therefore no respirator was required.

22. However, on or about October 2014 to November 2014, the Plaintiff was required to strip the floors again with a new chemically based floor stripper, one that contained either Rybar or another chemical that made Plaintiff sick.

23. On information and belief, this floor stripper contained the chemical that made Plaintiff sick years before.

24. On or about November of 2014, Plaintiff became ill again with an upper respiratory infection as a result of using the chemically based floor stripper.

25. As a result of this infection, Plaintiff was off work and was required to

obtain a release to work from his physician.

26. On or about December 10, 2014 Plaintiff returned to work with his doctor's release.

27. Plaintiff was then advised of a pre-disciplinary hearing that was scheduled for January 6, 2015 because of days he missed with his infection.

28. Plaintiff complained that had he been able to use the respirator while stripping the floors that he would not have gotten sick and that he should have been accommodated.

29. During this time, Plaintiff along with union representation applied from leave under the Family Medical Leave Act.

30. Plaintiff was subsequently approved for all of the days he had missed with the exception of November 22, 2014.

31. Despite being granted an accommodation, on or about January 12, 2015, Plaintiff received notification that he would be suspended for three (3) days for the one day (November 22, 2014) that was not approved under FMLA.

32. Plaintiff timely objected to this disciplinary action as he reasonably believed he was covered under the Americans with Disability Act.

33. Plaintiff also believed he should have been protected under the Family Medical Leave Act.

34. During one exchange with an employee Eboni Presswood

(Presswood), Plaintiff was warned that his accommodation documents could be removed and shredded from his file.

35. Defendant threatened Plaintiff that he would be terminated in an attempt to dissuade him from asking for his accommodation.

36. Presswood advised Plaintiff that if the documents were not in his file he could be terminated for missing work even if he had been granted the accommodation.

37. On or about January 15, 2015, Plaintiff attempted to bring his ADA accommodated respirator into the CCJTDC.

38. On that same day, Plaintiff's supervisor advised Plaintiff he would not be able to bring his respirator in because the information supporting his accommodation was not in his personnel file.

39. Plaintiff was advised that he must strip the floors with the chemically based stripper without the use of the respirator.

40. Defendant knew or should have known that Plaintiff suffered from serious health issues when he ingested the fumes from the chemical stripping agent.

41. Despite knowing the serious health risks that Plaintiff would be exposed to, Plaintiff was required to strip the floors and was not allowed to use the equipment previously approved to accommodate him.

42. On or about January 19, 2015, Plaintiff's union representative requested a copy of the June 2011 Dr.'s statement supporting Plaintiff's accommodation.

43. On or about January 29, 2015, Plaintiff submitted the June of 2011 doctor's statement to the Union, which indicated the approval of Deputy Brenda Welch.

44. Ultimately, Plaintiff was suspended for the period of February 10 through February 12th, of 2015 despite having been granted an accommodation.

45. Despite providing Defendant with proof of the accommodation, Defendant intentionally disregarded the accommodation and continued to expose Plaintiff to serious health hazards as he consumed the chemical agent.

46. Further, Plaintiff was further threatened that documents would be removed from his employee file and he would be terminated for complaining about his accommodation.

47. Despite these threats, Plaintiff continued to complain that he was being retaliated against for requesting the use of the respirator.

48. After complaining, employee Eboni Presswood stated to Plaintiff, "I don't care if you have a disability, we are a correctional facility and not subject to the ADA."

49. On or about March 13, 2015, Plaintiff was assigned to strip floors again with a chemically based stripper.

7

50. At approximately this same time, the union representative requested that Plaintiff be reassigned based on Plaintiff's doctor's note supporting his accommodation.

51. On or about March 19, 2015, Plaintiff received another physician's note stating that because of his respiratory condition that he should not be around the stripping agent Rybar.

52. This doctor's note was subsequently submitted to CCJTDC on March 26, 2015.

53. As Defendant continued to ignore Plaintiff's accommodation, on April 2, 2015, the CCJTDC requested by phone documents they referred to as "fitness for duty" papers from Plaintiff's physician.

54. Defendant in an egregious act of ignoring Plaintiff's disability, then questioned whether he was fit to perform his job.

55. Plaintiff realized at this point that Defendant was in the process of trying to terminate his employment.

56. On or about April 2, 2015, Plaintiff was advised that he was being placed on administrative leave.

57. Plaintiff was advised that fitness of duty documents must be received by April 13, 2015.

58. On April 7, 2015, Plaintiff's physician completed fitness for duty

documents with a release for Plaintiff to return to work.

59. On April 10 2015, Plaintiff had an appointment to meet with the physician of JTDC to obtain a release to return to work with the noted restrictions from his physician.

60. On or about April 13, 2015, Plaintiff was notified by human resources via phone that he would not be able to return to work with the noted restrictions from his physician.

61. Plaintiff was ultimately terminated from his employment in violation of the Americans with Disabilities Act.

## COUNT I

**Discrimination In Violation of the American With Disabilities Act**

62. Plaintiff re-alleges and incorporates by reference paragraphs 1 thru 61 above as if fully set forth herein.

63. Under the Americans with Disabilities Act ("ADA"), it is unlawful for covered employers to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4.

64. Under the ADA, prohibited discrimination includes "not making

reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b) (5).

65. The "reasonable accommodation" element of the [ADA] imposes a duty upon employers to engage in a flexible, interactive process with the employee needing accommodation so that, together, they might identify the employee's precise limitations and discuss accommodations which might enable the employee to continue working." *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir. 1998); *see also* 29 C.F.R. § 1630.2(o)(3).

66. Plaintiff was and is an individual with a disability within the meaning of the ADA at all times relevant to this lawsuit.

67. Plaintiff was and is substantially limited in the major life activities of speaking, communicating, concentrating, thinking, and interacting with others, as well as in the major bodily functions of the brain and neurological system as defined by the ADA.

68. Defendant regarded Plaintiff as disabled within the meaning of the ADA when it approved his use of a respirator when using the chemical stripping agent Rybar.

69. Plaintiff was a qualified individual under the ADA because he could perform his essential job functions with a reasonable accommodation. 42 U.S.C. § 12111(8).

70. Defendant was a covered employer under the ADA, as it employed more than fifteen employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. *Id.* § 12111(5).

71. Defendant discriminated against Plaintiff on the basis of his disability by terminating his employment on the basis of his disability when a reasonable accommodation could have been made.

72. Defendant discriminated against Plaintiff on the basis of his disability by failing to provide reasonable accommodations to Plaintiff.

73. Defendant discriminated against Plaintiff on the basis of his disability by failing to engage in an interactive process to consider possible reasonable accommodations for Plaintiff to perform her essential job functions.

74. Defendant's actions were intentional, willful, and in reckless disregard of Plaintiff's rights under the ADA.

75. Plaintiff has suffered damages as a result of Defendant's unlawful actions including but not limited to lost wages and benefits, emotional distress and humiliation, future pecuniary losses, Attorney's fees, and other damages.

## **Count II**

**Retaliation In Violation of Title VII-42 U.S.C. § 2000** *et. Seq.*

76   Plaintiff re-alleges and incorporates by reference paragraphs 1 thru 75 above as if fully set forth herein.

77.   As discussed in more detail *supra*, Plaintiff further alleges that Defendant CCJTDC as Plaintiff's employer retaliated against him for engaging in protected activity in violation of 42 U.S.C. § 2000e-3(a) (*i.e.* complaining that he was not accommodated with a respirator).

78.   Plaintiff opposed a discriminatory practice when he complained to his superiors that he felt he was being retaliated after being suspended for days missed that should have been covered under the Family Medical Leave Act or the Americans with Disabilities Act.

79.   Plaintiff complained that no disciplinary action had been taken against him until he complained that was not being accommodated.

80.   In spite of performing his duties in a professional manner, Barnes's complaints were ignored by Defendant CCJTDC, and BARNES was terminated.

81.   Defendant's conduct has resulted in damages to Plaintiff including but not limited to lost wages and benefits, emotional distress and humiliation, future pecuniary losses, Attorney's fees, and other damages.

**Count III**

## Intentional Infliction of Emotional Distress

82. Plaintiff incorporates herein Paragraph 1 through 81 of this Complaint.

83. At all times herein relevant, Defendant was bound by its common law and statutory duties to keep Plaintiff safe from harm and not to violate his right to be free from an abusive work environment.

84. Plaintiff BARNES has suffered substantial and enduring emotional injury as a result of Defendant exposing him to physical harm and threats of shredding his documents and termination.

85. Defendant knew or should have known, that its threats of termination and threats of shredding essential documents in his employment file would reasonably cause Plaintiff serious injury.

86. Defendants breached their duty to exercise due care by refusing to accommodate Plaintiff for his disability but instead created a hostile work environment that consisted of threats of termination and illegalities..

87. As a proximate result of Defendants' acts or omissions as described above, Plaintiff has suffered serious emotional distress in the form of shame, humiliation, degradation, and physical injuries in an amount to be determined at trial.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

A. All wages and benefits Plaintiff would have received but for

|   |   |
|---|---|
|    | the Title VII violations, including but not limited to back pay, front pay, pre-judgment interest, and restoration of job assignments; |
| B. | A permanent injunction enjoining Defendant from engaging in the practices complained of herein; |
| C. | A permanent injunction requiring that Defendant adopt employment practices and policies in accord and conformity with the requirements of Title VII; |
| D. | The Court retain jurisdiction of this case until such time as it is assured that Defendant have remedied the policies and practices complained of herein and are determined to be in full compliance with the law; |
| E. | An award of reasonable attorneys' fees, costs, and litigation expenses; and |
| F. | Such other relief as the Court may deem just or equitable. |

Respectfully Submitted,

*/s/ Andre P. Gaston*

Electronically filed on June 1, 2018    **Attorney for Plaintiff BARNES**

The Law Office of Andre P. Gaston
2 Mid America Plaza, Suite 800
Oakbrook Terrace, Illinois 60181
Phone:  630-560-3692
Fax:      630-566-0367
Email:  andre.gaston@agastonlaw.com